**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES T. OWENS,**

                                **Plaintiff,**                    **06-CV-0281**
                                                                                         **(GLS/DRH)**

                        **v.**

**STEVE LONGO, Executive Director**
**of Albany Housing Authority and**
**ALBANY HOUSING AUTHORITY,**

                                **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**FOR THE PLAINTIFF:**

JAMES T. OWENS
Plaintiff, *Pro Se*
2 Thurlow Terrace
Apartment 3G
Albany, New York 12203

**FOR THE DEFENDANTS:**

Rehfuss, Liguori Law Firm              JENNIFER L. CARLSON, ESQ.
40 British American Blvd.                JOHN W. LIGUORI, ESQ.
Latham, New York 12110


**Gary L. Sharpe**
**U.S. District Judge**

## **DECISION AND ORDER**

### **I. Introduction**

Plaintiff *pro se* James T. Owens ("Owens") alleges that his prior employer, Albany Housing Authority ("Albany Housing"), and Steve Longo ("Longo"), Executive Director of Albany Housing, discriminated against him based on his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*[1]  *See Dkt. No. 1, 4.*  It is asserted that defendants demoted Owens from a janitorial position to a lower paying grounds crew position because of his bad knee.  Pending is defendants' motion for summary judgement under FED. R. CIV. P. 56.  *See Dkt. No. 19.* For the reasons that follow, the motion is granted.

### **II. Facts**[2]

Owens began his employment with Albany Housing in June of 1999

_____

[1]The court notes that Owens' complaint asserts that his cause of action arises under the Pregnancy Discrimination Act of 1978.  *See Dkt. No. 1.*  As Owens is a male and the allegations sound in disability based discrimination, the court has liberally interpreted the complaint as asserting a cause of action under the Americans with Disabilities Act.  *See Dkt. No. 4.  See also Haines v. Kerner*, 404 U.S. 519 (1972) (holding that *pro se* pleadings are to be liberally construed).

[2]  Owens has not supported denials in his responsive statement of material facts with citations to the record, in violation of N.D.N.Y. R. 7.1(a)3.  Where the court has determined that record support nonetheless exists, it will view the facts in the light most favorable to Owens, as the non-moving party.  This is again appropriate in light of Owens' *pro se* status and because defendants' citations to the record are also occasionally off the mark.

as a member of the temporary grounds crew, which engaged in seasonal maintenance labor on Albany Housing property.  *See Def. SMF ¶ 1, Dkt. No. 19.*  In August of 2000, Owens quit that position to attend college, but was rehired in October of 2002, again as a temporary employee of the grounds crew.  *Id.* at ¶¶ 2,3.  In the winter of 2002 Owens began experiencing occasional pain in his right knee, which would occasionally fill with fluid.[3]  *Id.* at ¶ 5.  Despite the pain, Owens continued performing his grounds keeping duties effectively.  *Id.* at ¶ 6.  Owens' supervisors allowed him to leave work for brief periods to go to medical appointments regarding his knee.  *Pl. SMF ¶ 5, Dkt. No. 22.  See also Owens Dep. Tr. pg. 43-44, Dkt. No. 19.*

In November of 2003, Albany Housing assigned Owens to fill a custodial position at 200 Green Street.  *See Def. SMF ¶ 7, Dkt. No. 19.*  Owens found his custodial duties to be less taxing on his knee than his prior grounds keeping duties, but apparently did not inform anyone at Albany Housing of this fact.  *Id.* at ¶ 9.  While Owens knew he was still a temporary employee, it was his understanding that, in due time, he would

---

[3] According to his deposition testimony, Owens was hit by a car as a young child and, as a result, has had intermittent issues with his knees and walks with a limp.  *See Owens Dep. Tr. pg. 18-19, Dkt. No. 19.*

be given permanent status as a custodian.  *Id.* at ¶ 8; *Pl. SMF ¶ 8, Dkt. No. 22.  See also Owens Dep. Tr. pg. 36, Dkt. No. 19.*

At some point doctors determined that the pain in Owens' knee was caused by cartilage deterioration and, in March or April of 2004, he had arthroscopic surgery in an attempt to alleviate the problem.  *See Def. SMF ¶¶ 10, 11, Dkt. No. 19.*  Albany Housing was aware of the surgery and allowed Owens to take three weeks off.  *Id.* at ¶ 12.  Owens' doctors, allegedly informed only of Owens' janitorial duties, did not restrict the work activities he could perform.  *Id.* at ¶ 14, *Pl. SMF ¶ 14, Dkt. No. 22.*

When Owens returned from the surgery he was placed back on the temporary grounds crew, ostensibly due to complaints about his janitorial skills.  *See Def. SMF ¶ 13, Dkt. No. 19.*  Owens denies that there were any complaints about his work performance while he was a janitor.  *Pl. SMF ¶ 13, Dkt. No. 22.  See also Owens Dep. Tr. pg. 63, Dkt. No. 19.*  Owens continued to work on the temporary grounds crew for another nine months, though it would seem he did not notify anyone of the continuing pain in his knee.  S*ee Def. SMF ¶ 17, Dkt. No. 19.*

Subsequently, the Department of Social Services informed Owens that he owed $18,000 for disability payments he had received while

employed with Albany Housing.  *Id.* at ¶ 21.  Believing it to be in his

financial interests, and because Albany Housing would not make him a

permanent employee, Owens voluntarily left his employment in February of

2005.  *Id.* at ¶¶ 22, 23; *Pl. SMF ¶ 24, Dkt. No. 22*.  Owens then applied for

unemployment, but the Unemployment Insurance Appeals Board held that

he was not entitled to benefits because he had left Albany Housing of his

own volition.  S*ee Def. SMF ¶¶ 25, 26, Dkt. No. 19*.  Owens also filed a

complaint against Albany Housing with the New York Division of Human

Rights ("DHR") in March of 2005, alleging that disability based

discrimination by Albany Housing was the real reason for his return to the

grounds crew from his janitorial position.  *Id.* at ¶ 27.  The DHR dismissed

the complaint, finding that there was "no evidence that any of [Albany

Housing's] actions were a pretext for a discriminatory motive related to

[Owens'] disability."  *DHR Decision, Dkt. No. 19.*

Owens filed the current action on March 3, 2006, seeking damages[4]

on grounds that the decision to "demote" him from janitor to grounds crew

was based on impermissible considerations of his disability.  *Dkt. No. 1.*

---

[4] Owens seeks the difference between his $12.30/per hour salary as a janitor and his $8.00/per hour salary on the grounds crew for the 9 months he worked for Albany Housing full time after being removed from his janitor position.

5

Defendant Longo moves for summary judgment on the basis that

individuals cannot be held liable for ADA violations.  *Dkt. No. 19.*  All

defendants move for summary judgment on the basis that Owens does not

have a protected interest in his employment under the due process clause

of the Fourteenth Amendment and has failed to make out a *prima facie*

case of discrimination under the ADA.  *Id.*

### III. <u>Discussion</u>

### A. <u>Summary Judgment Standard</u>

The standard for the grant of summary judgment is well-established,

and will not be repeated here.  For a full discussion of the standard, the

court refers the parties to its previous opinion in *Bain v. Town of Argyle,*

499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

By Local Rule, a summary judgment motion shall contain a

Statement of Material Facts with a specific citation to the record where the

fact is established.  *See* L.R. 7.1(a)3.  Failure of the moving party to submit

an accurate and complete Statement of Material Facts shall result in a

denial of the motion.  *Id.*  The opposing party shall file a response to the

Statement of Material Facts.  *Id.*  Any facts set forth in the Statement of

Material Facts shall be deemed admitted unless specifically controverted

by the opposing party.  *Id.*

**B.    Due Process Claim**

Defendants first contend that Owens has failed to state a cause of action under the due process clause of the Fourteenth Amendment, as Owens was a temporary employee and therefore not entitled to procedural due process before his "demotion" from janitor to groundskeeper. Preliminarily, the court notes that it has not construed plaintiff's complaint as asserting a due process claim, but will address the issue nonetheless.

The Fourteenth Amendment guarantees that no state shall "deprive a person of life, liberty or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  As its terms make clear, the Amendment "applies to the acts of the states, not to acts of private persons or entities."  *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982).  To state a claim for wrongful demotion without due process of law "a plaintiff must [first] show that [he] has a property interest, created by state law, in the employment or the benefit that was removed."  *Bernheim v. Litt*, 79 F.3d 318, 322 (2d Cir. 1996).  If it is found that such an interest exists, the court must determine what procedural protections were due before the employer deprived the plaintiff of the employment or benefit, and whether such protections were

7

provided.  *See Narumanchi v. Board of Trustees of Conn. State Univ.*, 850 F.2d 70, 72 (2d. Cir. 1988).

It should be pointed out that Owens has not alleged that Albany Housing is a State entity or is so intertwined with the State that its actions can be considered State action.  Thus, it is unlikely that the Fourteenth Amendment applies to the conduct of Albany Housing.  However, even if the court were to find the Amendment applicable, it is undisputed that Owens was, at all times relevant, a temporary employee of Albany Housing.  This is so regardless of whether Owens "thought [he] was in good shape to get a permanent job as a custodian."  As such, the court is bound to apply the well settled rule that a temporary or at-will employee has no interest in his employment, and thus may not invoke the protections of the due process clause.  *See, e.g., Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002).  Accordingly, to the extent the complaint may be read as asserting a claim for denial of due process under the Fourteenth Amendment, such claim is dismissed.

## C.  ADA Claim

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such

individual in regard to ... advancement, ... employee compensation, ... and

other terms, conditions, and privileges of employment.  42 U.S.C. §

12112(a).  Claims of discrimination under the ADA are analyzed under the

burden shifting framework first set forth in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973).  *See Reg'l Econ. Cmty. Action Program v.*

*City of Middletown*, 294 F.3d 35, 48-49 (2d Cir. 2002) (applying *McDonnell*

*Douglas* framework in context of an ADA claim).  Under this framework,

> a plaintiff must first establish a prima facie case of
> discrimination.  The burden then shifts to the employer to
> articulate a legitimate, nondiscriminatory reason for its
> employment action....  If the employer meets this burden, the
> presumption of intentional discrimination disappears, but the
> plaintiff can still prove disparate treatment by, for instance,
> offering [substantial] evidence demonstrating that the
> employer's explanation is pretextual.

*Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003)

To establish a prima facie case of discrimination under the ADA

Owens must show: "(1) [that] his employer is subject to the ADA; (2) he

was disabled within the meaning of the ADA; (3) he was otherwise qualified

to perform the essential functions of his job, with or without reasonable

accommodation; and (4) he suffered adverse employment action because

of his disability."  *Heyman v. Queens Vill. Comm. for Mental Health*, 198

9

F.3d 68, 72 (2d Cir. 1999).  Defendants' arguments center on Owens'

alleged failure to establish that he is disabled within the meaning of the

ADA or was subjected to an adverse employment action.  Because the

court finds the issue of whether Owens is disabled under the ADA

dispositive, it need not address the question of whether Owens was

subjected to an adverse employment action.

There are three definitions of disability under the ADA: "(A) a physical

or mental impairment that substantially limits one or more of the major life

activities of such individual; (B) a record of such impairment; or (C) being

regarded as having such an impairment."  42 U.S.C. § 12102(2)(A)-(C).

The court considers each in turn.

### 1.   Substantially Limiting Impairment

The Supreme Court has set forth a three part test to determine

whether a plaintiff suffers from a disability under § 12102(2)(A).  First, a

court must determine whether the plaintiff suffers from a physical or mental

impairment.  *Bragdon v. Abbott*, 524 U.S. 624, 632 (1998).  A physical

impairment includes "[a]ny physiological disorder, or condition ... affecting"

the "musculoskeletal" system.  29 C.F.R. § 1630.2(h)(1).  It is clear that

Owens has an impairment, as he indisputably suffers from cartilage

10

deterioration in his knee and apparently walks with a limp.

Under the second step of the framework established in *Bragdon*, the court must determine whether the activity alleged to be impacted by the impairment is a major life activity. *Bragdon*, 524 U.S. at 637. Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2. While the complaint does not clearly express which life activities are alleged to be affected by Owens' bad knee, it seems apparent to the court that the major life activities of working and walking are implicated here.[5]

Under the final step of the *Bragdon* analysis, the court must determine whether the impairment of Owens' knee "was a substantial limit on the major life activit[ies]" implicated. *Bragdon*, 524 U.S. at 639. The court finds it was not. An impairment substantially limits a plaintiff's ability to perform a major life activity only if: (1) it prevents the plaintiff from performing the activity, or (2) it "significantly restricts [the] condition,

_____

[5] The court is aware that defendants have construed the complaint as implicating only the major life activity of work. However, in light of Owens' *pro se* status, his knee impairment, the physically intensive nature of his prior employment as a groundskeeper, and the C.F.R. inclusion of walking as a major life activity, it is proper to consider whether Owens is significantly limited in his ability to walk in determining whether he is disabled under the ADA.

manner, or duration [in] which [the plaintiff] can perform" the activity, as compared to the average person.[6]  29 C.F.R. § 1630.2(j)(1).

As to the effect of Owens' impairment in the context of his work activity; Owens has admitted he engaged in both his janitorial and grounds keeping duties without restriction, despite having cartilage deterioration and occasional moderate pain in his knee and a limp.  *See Owens Dep. Tr. pg. 42, 43, 48, 64, Dkt. No. 19.*  In addition, after having arthroscopic knee surgery, Owens continued to work on the grounds crew for nine months subsequent to his removal as a janitor.  While there is some discrepancy as to why Owens ultimately left Albany Housing,[7] there are absolutely no allegations that it was because of impairment-based limitations on his ability to work.

The closest Owens comes to alleging that problems with his knee substantially limited his ability to work is the assertion in his responsive 7.1 statement that "the heavy lifting was a problem" for him, apparently

---

[6]  EEOC regulations also outline factors to consider in determining whether an impairment is substantially limiting.  They are "(i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment, and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  29 C.F.R. § 1630.2(j)(2).

[7]  Defendants allege Owens left solely for financial reasons.  *Def. SMF ¶ 24, Dkt. No. 19.*  Owens states he also left because Albany Housing refused to make him a permanent employee.  *Pl. SMF ¶ 24, Dkt. No. 22.*

because of the pain and swelling in his knee.[8]  *Pl. SMF ¶ 6, Dkt. No. 22.*
However, he goes on to explain that he was able to control these issues
with medication.  *Id.*  Numerous decisions have made it abundantly clear
that "a physical impairment that would otherwise be classified as a
disability in its uncorrected state cannot be so deemed if, with aid of
corrective measures, the impairment does not substantially limit a major life
activity."  *Barnett v. Revere Smelting & Refining Corp.*, 67 F. Supp. 2d 378,
390 (S.D.N.Y. 1999) (citing, e.g., *Murphy v. United Parcel Service, Inc.*,
527 U.S. 516, 521 (1999)).  Thus, even if the court were to construe
Owens' unsupported statement as evidence that he was substantially
limited in his ability to work without medication, he would not meet the
disability definition under the ADA because he was not substantially limited
in his ability to work when on medication.

It is also clear that the problems with Owens' knee did not limit his
ability to walk to such a degree that he can be considered disabled.
Beyond his limp and intermittent moderate pain in his knee, Owens has
presented no evidence of restriction in his ability to walk.  These

_____

[8]  This statement is not supported by a citation to the record and would seem to
contradict portions of Owens' earlier deposition testimony.

impairments, without more, fail to establish a disability under the ADA, as a multitude of courts have expressly held that such symptoms do not constitute a "substantial limitation" in the ability to walk.  *See, e.g., Moore v. J.B. Hunt Transport, Inc.,* 221 F.3d 944 (7th Cir. 2000) (plaintiff with difficulty walking due to rheumatoid arthritis was not disabled)*; Talk v. Delta Airlines, Inc.,* 165 F.3d 1021, 1025 (5th Cir. 1999) (holding that plaintiff's limp and difficulty walking in extreme cold did not constitute a substantial limitation in that activity)*; Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997) ("moderate difficulty or pain experienced while walking does not rise to the level of a disability")*; Kelly v. Drexel University,* 94 F.3d 102 (3rd Cir. 1996) (plaintiff with joint disease that caused him "great difficulty in walking around" was impaired, but not disabled under the ADA); *Passanisi v. Berkley Adm'rs of Conn., Inc.*, No. 3:06cv313, 2007 WL 841946, at *7 (D. Conn. Mar. 19, 2007) (finding "moderate restrictions on the ability to walk do not amount to a substantial limitation").  Accordingly, Owens is not disabled under § 12102(A) of the ADA.

## 2.   **Record Disability**

Even if a plaintiff has failed to establish that he has an impairment which substantially limits a major life activity, a disability under the ADA

may be established by a record of such impairment.  42 U.S.C. §

12102(2)(B).  However, a plaintiff will not automatically be found disabled

upon presentation of records of a medical appointment or surgery

regarding an impairment.  *See Colwell v. Suffolk County Police Dept.*, 158

F.3d 635, 645-46 (2d Cir. 1998) (quoting *Burch v. Coca-Cola Co.*, 119 F.3d

305, 317 (5th Cir. 1997)).  Instead, according to the EEOC, the record must

be "relied on by an employer [and] indicat[e] that the individual has or has

had a *substantially limiting* impairment" in the context of a major life activity.

29 C.F.R. pt. 1630 App., § 1630.2(k) (emphasis added).  *See also Colwell,*

158 F.3d at 645.

Here, Owens has provided multiple doctors' reports regarding his

knee.  *Dkt. No. 22.*  However, there is absolutely no evidence presented

that Albany Housing ever reviewed these records or was even aware of

them.  In addition, the records provided fail to establish that the impairment

of Owens' knee substantially limited a major life activity.  It is true that

these reports describe arthritis, cartilage damage and the possibility of

future knee replacement.  However, despite recognition that Owens was

engaged in manual and janitorial labor, none of the records stated that he

should refrain from working or walking, nor did they restrict such activities.

In fact one medical record, executed 2 ½ weeks after Owens' arthroscopic surgery, unconditionally indicated that the medical staff was going to allow him to try to go back to work.[9]  In sum, these records establish no more impairment in Owens' knee than that the court has already held insufficient to establish a disability under § 12102(2)(A).  *See Colwell*, 158 F.3d at 645. Accordingly, Owens does not have a record disability under the ADA.

### 3.   **Perception of Disability**

The final method of establishing a disability under the ADA is through proof that the plaintiff's employer regarded the plaintiff as having an impairment that substantially limited a major life activity.  42 U.S.C. § 12102(2)(C).  As this disability definition makes clear, it is insufficient to show merely that the employer was aware that the plaintiff had an impairment, "rather, the plaintiff must show that the employer regarded the individual as disabled *within the meaning of the ADA*."  *Colwell*, 158 F.3d at 646 (emphasis in original).  Also, to establish a disability in the context of work, there must be evidence that the employer considered the plaintiff

---

[9]  Owens asserts that the doctors did not restrict him in his physical and employment activities because they were under the impression that he engaged only in janitorial work.  *Pl. SMF ¶ 14, Dkt. No. 22*.  Be that as it may, the court will not engage in wild speculation as to the sorts of restrictions medical professionals would have imposed had they been aware of Owens' more physically demanding activities.

16

"restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  29 C.F.R. § 1630.2(j)(3)(I); *see also Ryan v. Grae & Rybicki*, *P.C.*, 135 F.3d 867, 872 (2d Cir. 1998).

Here, Owens argues that Albany Housing considered him disabled because management knew he was having arthroscopic surgery and he obviously walked with a limp. However, he admittedly did not complain about the pain in his knee, indicate to anyone that his knee gave him problems in performing his job, or request an accommodation for his impairment.  In addition, the mere fact that Albany Housing moved Owens from a janitorial position to a more physically intensive position with the grounds crew is strong evidence that they did not consider him to be substantially limited in his ability to work or walk, nor physically precluded from a broad range of jobs.  Thus, while Albany Housing was almost certainly aware of Owens' impairment, there is insufficient evidence presented to permit a trier of fact to reasonably infer that Albany Housing considered him to be disabled within the meaning of the ADA.

## IV. Conclusion

Owens has not established that he has a disability within the meaning

of the ADA.  As such, his action must be dismissed for failure to set forth a

prima facie case of disability based discrimination.  Because this dismissal

disposes of all Owens' ADA claims, the court need not address defendant

Longo's argument that individuals are not subject to suit under the ADA.

WHEREFORE, for the foregoing reasons, it is hereby

ORDERED that the defendants' motion for summary judgment (**Dkt.

No. 19**) is **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY**;

and it is further

ORDERED that the Clerk of the Court enter judgment and close this

case; and it is further

ORDERED that the Clerk of the Court provide copies of this Order to

the parties by regular mail.

**IT IS SO ORDERED.**

January 7, 2008
Albany, New York


Gary L. Sharpe
U.S. District Judge